# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAROLINA MAESTRE )<br>    Plaintiff, )<br> )<br> ) **Case No.:** 1:18-cv-02495<br>    v. )<br> )<br> )<br>SDH SERVICES EAST, )<br>Limited Liability Company )<br>    Defendant. )<br>_____) | |

## COMPLAINT

**COMES NOW**, Plaintiff Carolina Maestre (hereinafter "Plaintiff" or "Ms. Maestre"), by and through her undersigned counsel, and files this, her Complaint against Defendant SDH Services East, LLC (hereinafter "Defendant" or "SDH Services"), and respectfully shows this Court as follows:

## NATURE OF COMPLAINT

1. Plaintiff brings this action to obtain full and complete relief and to redress the unlawful employment practices described herein.

2. This action seeks declaratory relief, liquidated and actual damages for Defendant's unlawful employment practices on the basis of national origin in violation of Title VII of the Civil Rights Act of 1964 42 USC §§ 2000e, et seq. (hereinafter "Title VII").

## JURISDICTION AND VENUE

3. Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 1983 and 42 U.S.C. § 2000e-5(f).

4. This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3) (civil rights).

5. The unlawful employment practices alleged in this Complaint were committed within the District of Columbia. Therefore, in accordance with 28 U.S.C. § 1391 and 42 U.S.C. §2000(e)-5(f), venue is appropriate in this Court.

## PARTIES

6. Plaintiff is a female (Hispanic/Cuban) citizen of the United States of America and is subject to the jurisdiction of this Court.

7. Defendant SDH Services, LLC is a wholly owned subsidiary company of Sodexo, Inc., is qualified and licensed to do business in the District of Columbia, and at all times material hereto has conducted business within this District.

## ADMINISTRATIVE PROCEDURES

8. On July 14, 2017, Plaintiff timely contacted the United States Equal Employment Opportunity Commission ("EEOC") and filed a complaint against SDH Services alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et. seq.*, and the Rehabilitation Act, identified as EEOC Charge No. 570-2017-01747N.

9. Plaintiff has exhausted all of her administrative remedies.

10. On or about July 14, 2017, Plaintiff submitted a Form 5 Charge to the EEOC alleging that SDH Services violated Title VII of the Civil Rights Act of 1964, as amended, due to discrimination based upon national origin and retaliation for filing a complaint of national origin, a protected activity.

11. The EEOC issued a "Notice of Right to Sue" on July 31, 2018, entitling an action to be commenced within ninety (90) days of receipt of that notice.

12. This action has been commenced within ninety (90) days of Ms. Maestre's receipt of the "Notice of Right to Sue."

## FACTUAL ALLEGATIONS

13. Plaintiff incorporates all information and allegations contained in the preceding paragraphs, as if fully set forth herein.

14. Plaintiff was hired by Defendant on or around January 9, 2017, as a Construction Project Manager II.

15. At all times relevant, Dan Ackley (Male/Caucasian), Julie Policastro (Female/Caucasian), Todd Murphy (Male/Caucasian), William Finn (Male/Caucasian), Arthur Ntengwe (Male/Nigerian) and Charon Johnson (Female/African-American) acted in supervisory capacity to Plaintiff.

16. At all times relevant, Guy Kosmin (Male/Caucasian), Construction Project Manager II, had the same duties and responsibilities as Plaintiff.

### Failure to Hire

17. Approximately three weeks into Plaintiff's employment the Vice President of Operations, Patrick Walsh, told Plaintiff's husband to tell Plaintiff to apply to the position for Director of Project Management. Mr. Walsh told Plaintiff that he thought she would be a good fit for the position and to apply to the position.

18. On or around January 30, 2017, Plaintiff applied for the Director of Project Management position.

19. On or around February 15, 2017, Plaintiff was approached by her supervisor, Dan Ackley, and was told to apply to the Director of Project Management Position. However, when Plaintiff checked the system her information did not show up.

20. On or around February 20, 2018, Mr. Ackley requested an one-on-one meeting with Plaintiff in which he discouraged Plaintiff from pursuing the position he encouraged her to apply for. During the meeting, Mr. Ackley encouraged Plaintiff to leave the project management field altogether.

21. Two days later, on or around February 22, 2018, Plaintiff had a one-on-one meeting with Mr. Ackley during which he informed Plaintiff that someone was selected for the Director of Project Management position.

22. Despite being qualified for the position, a Caucasian male was selected for the Director position before Plaintiff had the opportunity to interview.

## Disparate Treatment – Race Discrimination

23. After approximately two months in her position, Plaintiff was given an office space in the concourse level sharing same office with her supervisor, Todd Murphy (Caucasian). The arrangement was unusual and contrary to what had been provided to Mr. Kosmin. Mr. Kosmin had a separate office out of sight from IMF customers and that was not shared. The unusual office arrangement prompted another employee, Joe Hall, to comment to Mr. Murphy that he "grabbed a secretary" – referring to Plaintiff.

24. Further, Mr. Kosmin had access to internal systems and softwares that were required to fulfill the duties and responsibilities of Plaintiff's position that Plaintiff did not have access to. During the first several months of employment, Plaintiff requested access several times. The access and software needed to perform the duties of Plaintiff's position included but were not limited to: access to the R: Drive; Autocadd; Constructware; System Issues Log and Forms. Plaintiff did not fully gain access to these systems until after six months of her hire date. indicates that I did not receive the essential software until six months Plaintiff's hire date.

25. Mr. Kosmin also had the equipment to do Plaintiff's position that she did not have. Although Plaintiff requested equipment, tools and supplies such as: lap top, tablet, desk top computer, copier, cell phone, landline phone and office, stapler, printing paper etc. she did not get the equipment until one to two months after her hire date. Although they shared the same job title, Plaintiff never received some of the equipment that was provided to Mr. Kosmin.

26. Plaintiff was not included in departmental group emails that were essential to her job function until two months after her employment.

27. Over the course of her employment, Plaintiff was given 31% more projects than Male Construction Project Managers predecessors and counterparts. Her projects increased from 32 projects to 42 projects.

28. Plaintiff was also mandated to do more work than her male counterparts. For example, Plaintiff had to perform walk-a-bout inspections of building areas during the Annual Spring Meeting for ten consecutive days, in which Mr. Kosmin was exempt from having to perform the same duties that she was required to perform.

29. Plaintiff was not paid equally to her similarly situated Caucasian, male counterparts.

30. Over the course of her employment, Defendant changed Plaintiff's reporting structure five times. Her reporting structures included some combination of Todd Murphy, William Finn, Dan Ackley, Shanan Bobon, Julie Policastro and Charon Johnson.

31. On or around May 23, 2017, Julie Policastro (Caucasian) changed Plaintiff's direct report to Charon Johnson, which Ms. Policastro did without the involvement of Human Resources in order to further subject Plaintiff to a hostile work environment.

**Hostile Work Environment – Gender Discrimination**

32. Arthur Ntengwe (Male/Nigerian), IMF employee, often addressed and ordered Plaintiff in a such a demanding and belittling tone frequently yelling at her in front of Plaintiff's co-workers. His tone was so aggressive that Plaintiff believed Mr. Ntengwe wanted to hit her. For example, Mr. Ntengwe belittled her in front of one of Defendant's Human Resources representative, April Stevenson, on the status of a project that Plaintiff and Ntengwe were working on together. Ntengwe was upset because he did not have and not obtain a Purchase Order Number to start the project. Due interactions such as these, Plaintiff tried where she could to keep their communication at a physical distance.

33. Despite Ms. Stevenson witnessing this behavior, she failed to take action.

34. On another occasion, Mr. Ntengwe yelled at Plaintiff while she was on the way to a meeting because he was upset at the speed of the project. In a hostile manner, Ntengwe yelled "The project must get started". Plaintiff had no control over the submission of the purchase order and needed the purchase order number to be released in order to start the project. When Plaintiff finally received the number, Mr. Ntengwe cancelled the project. Plaintiff explained that by stopping the production order before manufacturing commenced, she had in fact saved the organization thousands of dollars. Plaintiff received no gratitude from him for her efforts.

35. On or around March 6, 2017, Plaintiff saw her supervisor, Todd Murphy, going to Mr. Ntengwe's office and Plaintiff overheard Mr. Ntengwe saying to Mr. Murphy to " get rid of Carolina", " this hard headed woman", followed by a punching sound over and over again. Plaintiff overheard Mr. Murphy reply, " it is not that easy". Plaintiff got up from her chair and passed by Mr. Ntengwe's office to further investigate and witnessed Mr. Ntengwe hitting his desk with a closed fist.

36. Plaintiff complained to Human Resources regarding Mr. Ntengwe's hostile behavior. Plaintiff was told by April Stevenson, Human Resources representative, to take a break and go home. Ms. Stevenson informed Plaintiff that she could work from anywhere which Plaintiff could not since she would not be able to fulfill her duties as Project Manager if she were offsite.

**Retaliation**

37. On or around April 26, 2017, after Plaintiff complained, the Defendant changed her reporting structure to a less experienced, less qualified new hire Shanon Bobon (Caucasian).

38. On or around May 23, 2017, Plaintiff was forced by Policastro to take a position in a different department, Tenant Services. Plaintiff never agreed to taking the position. Plaintiff was threatened by Policastro to take the position or risk having her employment terminated. Policastro told Plaintiff that she would be able to terminate her because there were letters in Plaintiff's human resources file. Plaintiff asked her to see the letters and she refused. Policastro also stated that their meeting would be undocumented and would not show up in Defendant's system.

39. On or around May 23, 2017, Plaintiff reported to Tenant Services under the supervision of Charon Johnson, Director of Tenant Services. Almost immediately, Johnson continued the pattern of harassment and discrimination perpetuated by Plaintiff's other supervisors.

40. On one occasion, Plaintiff requested to go to doctor because she was feeling ill. Ms. Johnson denied Plaintiff the opportunity to seek medical treatment, despite Plaintiff requesting to seek treatment five times. Because of the denial, Plaintiff's condition was exacerbated and she had to go to the emergency room.

41. On or around June 22, 2017, Ms. Johnson said that the word Plaintiff used to identify the phase of a project was "shit". The word Plaintiff used is the correct term to identify

the status of a project. Plaintiff tried explaining that to Ms. Johnson and she replied, in a domineering tone, "shut up" in front of Plaintiff's coworkers.

## **COUNT ONE**
Race Discrimination
42 U.S.C. § 2000e-2(a)(1)
*(Hispanic/Cuban)*

42. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth, herein.

43. Plaintiff has exhausted her administrative remedies under Title VII of the Civil Rights Act of 1964, as amended.

44. Defendants are "persons" within the meaning of 42 U.S.C. § 1983.

45. At all times relevant to this Complaint, Defendants and their agents were acting under color of the laws, customs and usages of the District of Columbia within the meaning of 42 U.S.C. § 1983.

46. Plaintiff is a member of a protected class, as she is Hispanic/Cuban.

47. Defendant discriminated against Plaintiff because of her race in violation of Title VII, 42 U.S.C. § 2000e-(2)(a), by engaging in, tolerating or failing to prevent race-based harassment alleged herein and by failing to take affirmative action to correct and redress these unlawful employment practices.

48. During Plaintiff's employment, Mr. Ackley, Ms. Policastro, Mr. Murphy and Ms. Johnson, subjected Plaintiff to disparate treatment on the basis of her race. Plaintiff performed the duties and responsibilities of her job adequately.

49. This conduct and other incidents of harassment described above were because of Plaintiff's race, and Plaintiff did not see her supervisors or others treat the non-Hispanic employees in the manner she was being treated.

50. The harassment directed at Plaintiff was either intended to cause her severe emotional distress or was perpetrated with malice or reckless indifference to the likelihood that it would cause such distress. Defendant is, therefore, liable to Plaintiff for all damages proximately resulting from the distress she has suffered relating to the conduct of Defendant.

51. Due to Defendant's actions, Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering and such impact is on-going and permanent in nature.

52. Plaintiff has incurred lost wages and loss of career opportunity, now and into the future, without Plaintiff contributing any negligence thereto.

**COUNT TWO**
Hostile Work Environment
42 U.S.C. § 2000e-2(a)(1)

53. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth, herein.

54. Plaintiff has exhausted her administrative remedies under Title VII of the Civil Rights Act of 1964, as amended.

55. Defendants are "persons" within the meaning of 42 U.S.C. § 1983.

56. At all times relevant to this Complaint, Defendants and their agents were acting under color of the laws, customs and usages of the District of Columbia within the meaning of 42 U.S.C. § 1983.

57. Plaintiff is a member of a protected class, as she is Hispanic.

58. Defendant discriminated against Plaintiff because of her national origin in violation of Title VII, 42 U.S.C. § 2000e-(2)(a), by engaging in, tolerating or failing to prevent the national origin discrimination alleged herein and by failing to take affirmative action to correct and redress these unlawful employment practices.

59. During Plaintiff's employment, Ms. Julie Policastro subjected Plaintiff to a barrage of offensive and unwelcome comments. Plaintiff clearly indicated that the conduct was unwelcome. Plaintiff did not solicit or incite the conduct and she perceived the conduct to be offensive and/or undesirable.

60. This conduct and other incidents of harassment described above were because of Plaintiff's national origin.

61. The conduct suffered by Plaintiff was sufficiently pervasive and/or severe to alter and did alter a condition of Plaintiff's employment and created an abusive working environment.

62. Plaintiff and similarly situated employees were detrimentally affected by the conduct and such conduct would have detrimentally affected a reasonable man in Plaintiff's position.

63. The Defendant knew or should have known of the discrimination described herein and Ms. Policastro's propensity to engage in such national origin-based harassment and failed to implement prompt, appropriate or corrective action.

**COUNT THREE**
Gender Discrimination
42 U.S.C. § 2000e-2(a)(1)
*(Female)*

64. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth, herein.

65. Plaintiff has exhausted her administrative remedies under Title VII of the Civil Rights Act of 1964, as amended.

66. Defendants are "persons" within the meaning of 42 U.S.C. § 1983.

67. At all times relevant to this Complaint, Defendants and their agents were acting under color of the laws, customs and usages of the District of Columbia within the meaning of 42 U.S.C. § 1983.

68. Plaintiff is a member of a protected class, as she is a female.

69. Defendant discriminated against Plaintiff because of her gender in violation of Title VII, 42 U.S.C. § 2000e-(2)(a), by engaging in, tolerating or failing to prevent the gender-based harassment alleged herein and by failing to take affirmative action to correct and redress these unlawful employment practices.

70. During Plaintiff's employment, Mr. Ntengwe, subjected Plaintiff to a barrage of offensive and unwelcome comments. Plaintiff clearly indicated that the conduct was unwelcome. Plaintiff did not solicit or incite the conduct and she perceived the conduct to be offensive and/or undesirable.

71. This conduct and other incidents of harassment described above were because of Plaintiff's gender, and Plaintiff did not see Mr. Ntengwe or others harass the male employees in the manner she was being harassed.

72. The harassment directed at Plaintiff was either intended to cause her severe emotional distress or was perpetrated with malice or reckless indifference to the likelihood that it would cause such distress. Defendant is, therefore, liable to Plaintiff for all damages proximately resulting from the distress she has suffered relating to the conduct of Defendant.

73. Due to Defendant's actions, Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering and such impact is on-going and permanent in nature.

74. Plaintiff has incurred lost wages and loss of career opportunity, now and into the future, without Plaintiff contributing any negligence thereto.

## COUNT FOUR
Retaliation Based Upon Protected Activity
42 U.S.C. § 2000e-2(a)(1)

75. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth, herein.

76. Defendants are "persons" within the meaning of 42 U.S.C. § 1983.

77. At all times relevant to this Complaint, Defendants and their agents were acting under color of the laws, customs and usages of the District of Columbia within the meaning of 42 U.S.C. § 1983.

78. Plaintiff has exhausted her administrative remedies under Title VII of the Civil Rights Act of 1964, as amended.

79. Plaintiff complained verbally and in writing to Defendant's management and officials regarding her belief that she was being subjected to harassment and discriminatory conduct based on national origin.

80. Defendant subjected Plaintiff to the aforementioned adverse employment actions because of her participation and opposition to unlawful and discriminatory employment practices in violation of Title VII, Section 1983.

81. The adverse retaliatory actions to which Plaintiff has been subjected are a direct result of Plaintiff having previously engaged in protected EEO activity.

82. Similarly situated employees (no known prior EEO activity) were not subjected to the same, similar, or any other adverse treatment.

83. Other employees who were similarly situated, but members of a different protected class than Plaintiff, have received different terms and conditions of employment.

84. Defendant's unlawful conduct has created a climate of fear and intimidation for Plaintiff and other employees, which creates a chilling effect upon other employees' willingness to engage in protected activity.

85. Defendant's unlawful conduct negatively impacted the terms, conditions, and privileges of Plaintiff's employment.

86. Defendant's retaliatory conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her participation and opposition to Defendant's discriminatory conduct.

87. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants, and employees while acting within the course and scope of their employment, under the theory of *respondeat superior*.

88. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages – including, but not limited to, past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

89. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity, now and into the future, without Plaintiff contributing any negligence thereto.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a. Order the Defendant institute a policy and procedure to be implemented against discrimination;

b. Supervisory training for the supervisors at issue herein;

c. Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein; and

d. Award compensatory damages in excess of Two Hundred Thousand Dollars ($200,000.00);

e. Award lost wages;

f. Award back pay and benefits, with interest;

g. Award future wages;

i. Award reasonable attorney fees, costs, and expenses incurred for this action;

j. Award equitable, declaratory, and injunctive relief;

k. Award differential in salary compared to similarly-situated male counterparts; and

l. Award such other and further relief as this Honorable Court deems just and proper.

## JURY DEMAND

90. Pursuant to Fed. R. Civ. P. 38, Plaintiff demands trial by jury on all issues so triable.

Dated: October 29, 2018

                                        Respectfully submitted,

                                        /s/ Reshad Favors_____
                                        Reshad Favors (D.C. Bar #1034316)
                                        THE MOSAIC LAW FIRM PLLC
                                        1629 K Street, NW Suite 300
                                        Washington, DC  20006
                                        (202) 508-8249
                                        reshad.favors@themosaiclawfirm.com

                                        *Counsel for Plaintiff*